1 F.3d 1241
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
KENTUCKY STATE DISTRICT COUNCIL OF CARPENTERS, AFL-CIO,
Plaintiff-Appellant,
v.
WEHR CONSTRUCTORS, INC., Defendant-Appellee.
 No. 92-5931.
 United States Court of Appeals, Sixth Circuit.
 July 28, 1993.
 
 Before JONES and BATCHELDER, Circuit Judges and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Kentucky State District Council of Carpenters, AFL-CIO (the "Union"), appeals the dismissal of its action for failure to state a claim upon which relief can be granted. Insofar as the district court's Order dismissing the action was based on a misapprehension of law concerning the rule requiring exhaustion of contractual remedies, we reverse its decision in part, and remand for further proceedings.
 
 
 2
 * According to the Union's Complaint, the Union and Defendant-Appellee Wehr Constructors, Inc. ("Wehr") operated under at least two largely concurrent collective bargaining agreements beginning in 1982. One agreement, the "Lexington Agreement," expired on May 31, 1988. The other agreement, the "Louisville Agreement," expired on May 31, 1989.
 
 
 3
 The Union alleges that, during the time period in which these agreements were in force, Wehr breached their provisions relating to subcontracting. The specific provision of the Lexington Agreement that was allegedly breached reads:
 
 ARTICLE V SUBCONTRACTING
 
 4
 All work falling under the jurisdiction of the Union which has been mutually negotiated shall be assigned to or subcontracted to a contractor having an agreement with the Union.
 
 
 5
 J.A. at 73 ( [Magistrate Judge's] Findings of Fact, Conclusions of Law and Recommendation [hereinafter Magistrate Judge's Report] at 2). The specific provision (1.10) of the Louisville Agreement that was allegedly breached reads:
 
 
 6
 Subcontracting--The signatory contractor, who subcontracts any portion of the work within the jurisdiction of the Union, agrees he will not subcontract to any person, firm, or corporation, unless the aforesaid person, firm, or corporation performing the subcontract work in question, agrees to observe and be bound by all of the terms and conditions of this Agreement.
 
 
 7
 The Union recognizes that the Employer is free to subcontract work which is not the type coming within the jurisdiction of the United Brotherhood of Carpenters and Joiners of America, Inc., as set forth in Section 1.3 of this Article, to Employers who are not signatory to this Agreement.
 
 
 8
 Id. The Union claims that these provisions were breached when Wehr, as general contractor, subcontracted with those not having an agreement with the Union (a violation of the Lexington Agreement) or with those who had not agreed to adhere to the terms of the Louisville Agreement. The alleged breaches allegedly occurred before the expiration of one or both of the collective bargaining agreements.
 
 
 9
 The Union, however, did not file any grievances relating to the alleged breaches before the collective bargaining agreements expired. The Union claims that it did not discover the alleged breaches until after the expiration of the agreements due to misrepresentations made by Wehr. Specifically, the Union maintains that it was told by Wehr with regard to at least five different construction jobs that Wehr was not the general contractor but the "project manager" or "construction manager" or "manager." Id. at 24-25 (Plaintiff's First Amended Complaint at 2-3).[1] The Union claims that it did not come to realize the alleged falsity of Wehr's representations until certain investigative efforts by the National Labor Relations Board ("NLRB") uncovered the alleged fact that Wehr was the general contractor with regard to the sites in question, with concomitant authority over hiring subcontractors. According to the Union, the alleged fraud "was uncovered ... well after the expiration of the parties' Collective Bargaining Agreement." Union's Br. at 7.
 
 
 10
 In a letter dated April 29, 1991 and addressed to Wehr, the Union wrote:
 
 GRIEVANCE
 
 11
 ... I am serving the following grievance ... pursuant to Article 3 of the contract....
 
 
 12
 [The Union] grieves (pursuant to Section 3.1) all possible multiple violations by [Wehr] of the parties' subcontracting restrictions (Section 1.10) under the parties' collective bargaining agreement, whose duration pursuant to Section 7.3 is June 1, 1986 to and including May 31, 1989 [referenced above as "the contract"].
 
 
 13
 [The Union] demands a meeting ... pursuant to the contract on all jobs during the contract period where the work within the carpenters' jurisdiction was subcontracted to any non-union subcontractor.
 
 
 14
 J.A. at 22 (emphasis in original). Receiving no response from Wehr to this letter, the Union sent the following letter dated May 17, 1991:
 
 GRIEVANCE
 
 15
 ....
 
 
 16
 To date, we have not received any response to our GRIEVANCE dated April 29, 1991, which was received by your office on May 1, 1991, according to the certified mail return receipt.
 
 
 17
 We have waited ten calendar days or ten working days and have not received the courtesy of a reply.
 
 
 18
 Pursuant to the terms of the collective bargaining agreement, we are now requesting a meeting at the next step of the grievance procedure [3.1(b) ]. Your ignoring the grievance should not be allowed to frustrate the process.
 
 
 19
 Id. at 21 (emphasis in original).
 
 
 20
 Again receiving no reply, the Union filed suit in the United States District Court for the Western District of Kentucky on September 12, 1991, under Section 301 of the Labor Management Relations Act of 1947 (the "Act"), 29 U.S.C. Sec. 185 (1988). For alleged breaches of the collective bargaining agreements and for alleged violations of pendent state common law claims of "fraudulent misrepresentation" and "concealment and nondisclosure," J.A. at 13-19 (Complaint at 7-13), the Union sought, inter alia, consequential and exemplary damages and a judgment declaring that Wehr is obligated to proceed to arbitration of grievances.
 
 
 21
 Wehr moved to dismiss the suit on the basis of Rule 12(b)(6) of the Federal Rules of Civil Procedure. The matter was referred to a magistrate judge who found that the Union did not state a claim upon which relief can be granted, and thus recommended dismissal of the action pursuant to Rule 12(b)(6). More specifically, the magistrate judge concluded that the Union had failed to exhaust contractual grievance procedures and that this failure was not excused by any recognized exception to the rule requiring such exhaustion. The alleged misrepresentations on the part of Wehr were not considered of the type that would excuse the Union "from attempting to use the grievance procedures established in the parties' collective bargaining agreement" or "from pursuing its obligation to exhaust its contractual remedies." J.A. at 77 (Magistrate Judge's Report at 6). In the magistrate judge's view, these alleged misrepresentations related solely to the merits of the breach of contract issues and bore no reflection of Wehr's attitude toward the grievance process as a means by which to resolve these issues. The magistrate judge also considered the state claims to be preempted by federal law and thus subject to dismissal for the same reasons as the claims specifically referring to breaches of the collective bargaining agreements. The Magistrate Judge's Report was filed on May 12, 1992.
 
 
 22
 On June 25, 1992, the district court filed an Order accepting the magistrate judge's findings and conclusions. The Order cited Terwilliger v. Greyhound Lines, 882 F.2d 1033 (6th Cir.1989), cert. denied, 495 U.S. 946 (1990), for the proposition that the misrepresentations alleged by the Union were not of the type to excuse the Union from failing to follow the grievance procedures set forth in the collective bargaining agreements. The district court dismissed the Union's action with prejudice.
 
 
 23
 The Union timely appealed on July 15, 1992.
 
 II
 
 24
 Our review of a district court's dismissal of an action on Rule 12(b)(6) grounds is de novo. Dugan v. Brooks, 818 F.2d 513, 516 (6th Cir.1987). In performing this task, we must view the Union's complaint in a light most favorable to the Union, accepting all of the factual allegations of the complaint as true. Id.; see also Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir.1983), cert. denied, 469 U.S. 826 (1984). If, after construing the complaint in this fashion, the Union "undoubtedly" or "beyond doubt" can prove no set of facts in support of its claims that would entitle it to relief, dismissal is appropriate. Dugan, 818 F.2d at 516; Windsor, 719 F.2d at 158.[2]
 
 III
 
 25
 * In accordance with the federal policy favoring arbitration of labor disputes, an attempt to exhaust contractual grievance and arbitration procedures, generally speaking, is a prerequisite to any Section 301 action where the collective bargaining agreement sued upon provides for such procedures. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 219 (1985) ("If respondent had brought a contract claim under Sec. 301, he would have had to attempt to take the claim through the arbitration procedure established in the collective-bargaining agreement before bringing suit in court."); Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563 (1976) ("[A]n employee [can]not sidestep the grievance machinery provided in the contract and ... unless he attempt[s] to utilize the contractual procedures for settling his dispute with his employer, his independent suit against the employer in the District Court [will] be dismissed."); Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965) ("As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress.") (footnote omitted; emphasis in original); Terwilliger, 882 F.2d at 1038-39. "A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness ... as well as eviscerate a central tenent of federal labor-contract law under Sec. 301 that is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." Allis-Chalmers, 471 U.S. at 220. A Section 301 plaintiff, however, may be excused from attempting to exhaust the contractual grievance and arbitration remedies: (1) "when the conduct of the employer amounts to a repudiation of [the] contractual procedures," Vaca v. Sipes, 386 U.S. 171, 185 (1967); or (2) "where the effort to proceed formally with contractual or administrative remedies would be wholly futile," Glover v. St. Louis-San Francisco Ry., 393 U.S. 324, 330 (1969).
 
 B
 
 26
 The Union contends that it attempted to exhaust the contractual grievance and arbitration procedures, at least as to violations of the Louisville agreement,[3] by sending the April 29, 1991 and May 17, 1991 letters.[4] Wehr maintains that this alleged attempt was fatally untimely not by reference to any statute of limitations, but rather because the attempt was made after the expiration of the collective bargaining agreement.[5] It is apparent that the magistrate judge and the district court accepted Wehr's argument.
 
 
 27
 Wehr argues that, where there is no contract extant between the parties, there is no obligation to continue to abide by the expired grievance provisions. It further contends that its actions post-expiration are not evidence that it repudiated the contractual remedies before expiration or that pursuit of contractual grievance procedures would have been futile before expiration. Thus, in Wehr's view, since the Union did not attempt to exhaust contractual remedies during the term of the collective bargaining agreement, and cannot be excused for this failure during the term of the collective bargaining agreement, the district court's decision should stand.
 
 
 28
 Wehr begins its justification of its stance with Terwilliger. In that case, Marion Terwilliger, a bus driver employed by Greyhound Lines, Inc. ("Greyhound") and a member of the local chapter of the Amalgamated Transit Union (the "ATU"), was disqualified from employment as a bus driver due to heart problems. Five years passed, during which time he passed a Department of Transportation physical and began driving buses for a local carrier. In 1971, he sought reinstatement as a bus driver for Greyhound. His application included a statement from his personal physician that he was fit for such employment.
 
 
 29
 In accordance with the collective bargaining agreement between Greyhound and the ATU in force at the time of Terwilliger's 1971 application, Greyhound referred him to an independent physician for a second opinion on his fitness for employment as a bus driver. This independent physician submitted a report in which he recommended against employing Terwilliger as a bus driver, citing below-standard vision and a Department of Transportation code number relating to heart disease. Greyhound asked the physician for clarification of these findings. The physician replied with a letter and a second report which maintained that Terwilliger's vision was below standard, but that his heart condition met Department of Transportation standards, though perhaps not Greyhound's internal standards. Greyhound then rejected Terwilliger's application. Terwilliger challenged the denial of his reinstatement.
 
 
 30
 Based on the apparently conflicting medical views of Terwilliger's heart condition, Greyhound and the ATU followed the procedure outlined in the collective bargaining agreement and had Terwilliger examined by a third physician. This third physician concluded that Terwilliger should not be employed due to his heart condition. Based on this conclusion, Greyhound confirmed its denial of Terwilliger's application for reinstatement in 1971.
 
 
 31
 In 1984, Terwilliger first became aware of the second physician's second report. In 1985, he discovered an internal Greyhound memorandum that he claimed was evidence that Greyhound fraudulently withheld the second report of the second physician as part of a scheme to deny his reinstatement. Terwilliger filed a Section 301 suit in August 1985. He asserted that Greyhound intentionally changed the second physician's first report and concealed the second report in order to secure the ATU's agreement under the collective bargaining agreement to an examination by a third physician--all as part of a plot not to rehire him as a bus driver.
 
 
 32
 Of relevance to the instant case, the Terwilliger court examined whether Terwilliger had satisfied the exhaustion requirement. Finding that "Terwilliger never attempted to invoke the procedures available to him," 882 F.2d at 1040, the court maintained that Terwilliger had failed to meet the exhaustion requirement unless he could establish entitlement to the futility or repudiation exception. The court stated that Greyhound's alleged fraudulent activity did "not indicate that the company would not have cooperated with the dispute resolution process and [did] not constitute a clear and positive showing of futility." Id. at 1039. Nor did Greyhound's actions suggest to the court that the company repudiated the collective bargaining agreement regarding the available grievance procedures. See id. at 1039-40.
 
 
 33
 Wehr somehow gleans from Terwilliger that, had Terwilliger attempted to exhaust contractual remedies, for example, in 1985, the Sixth Circuit would still have found for Greyhound because Terwilliger did not grieve in the year of the alleged fraud--1971. See Wehr's Br. at 14-15 ("The central issue before the Court was whether the fact that Terwilliger was misled by Greyhound's fraudulent concealment and misrepresentations excused his failure in 1971 to resort to the grievance and arbitration machinery.") (emphasis added); see also id. at 30 ("the decision of the Court in Greyhound was premised on the finding that plaintiff Terwilliger had not grieved in 1971 when his application for reinstatement was refused") (emphasis in original). We disagree with this interpretation of Terwilliger. The Terwilliger court's decision was firmly based on the fact that Terwilliger never attempted to utilize the grievance procedures established by the collective bargaining agreement, and the fact that no evidence suggested that Greyhound repudiated such procedures or otherwise suggested that pursuit of these procedures would have been futile. The issue of timeliness was never addressed. Nor was the import, if any, of an expiration of a collective bargaining agreement. In fact, there is no mention that the collective bargaining agreement between Greyhound and the ATU never expired. In sum, Terwilliger does not stand for the proposition that a grievance must be filed during the year of an alleged breach of a collective bargaining agreement or before the agreement expires.
 
 
 34
 Wehr next considers Anderson v. Ideal Basic Indus., 804 F.2d 950 (6th Cir.1986), to support its position that post-expiration grievances are fatally untimely. In Anderson, the court determined that union members had not exhausted grievance procedures and that this lack of exhaustion was not excused by any employer repudiation of these procedures. The court wrote:
 
 
 35
 The Local Union members never filed a grievance with their employer, Ideal, until two weeks before they filed this lawsuit. It is spurious, therefore, for the members to claim that Ideal's conduct amounted to a repudiation of the grievance procedure. The members' inaction precludes a finding of repudiation by Ideal.
 
 
 36
 Id. at 952.
 
 
 37
 In Anderson, the court rested its finding of no repudiation and thus no excuse for lack of exhaustion on the fact that the grievance was filed by the union members only two weeks before the lawsuit was filed. The employer was not given a real chance to reply and thus could not be said to have repudiated the grievance procedures. Whether the union members filed their grievance on the same day of the alleged violation, the same year of the alleged violation, or before the expiration of the collective bargaining agreement was of no import in the Anderson court's analysis of whether the union members could be said to have satisfied the exhaustion requirement.
 
 
 38
 In addition to finding no case support for Wehr's position, we find case law against it. In Nolde Bros. v. Local 358, Bakery & Confectionary Workers Union, 430 U.S. 243 (1977), the Supreme Court specifically held that an employer was bound to arbitrate a dispute arising under a collective bargaining agreement in spite of the fact that the grievance process was initiated after the collective bargaining agreement had expired. The Court wrote:
 
 
 39
 Nolde contends that the duty to arbitrate, being strictly a creature of contract, must necessarily expire with the collective-bargaining contract that brought it into existence. Hence, it maintains that a court may not compel a party to submit any post-contract grievance to arbitration for the simple reason that no contractual duty to arbitrate survives the agreement's termination. Any other conclusion, Nolde argues, runs contrary to federal labor policy which prohibits the imposition of compulsory arbitration upon parties except when they are bound by an arbitration agreement....
 
 
 40
 Our prior decisions have indeed held that the arbitration duty is a creature of the collective-bargaining agreement and that a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so. Adherence to these principles, however, does not require us to hold that termination of a collective-bargaining agreement automatically extinguishes a party's duty to arbitrate grievances arising under the contract. Carried to its logical conclusion that argument would preclude the entry of a post-contract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination. The same would be true if arbitration processes began but were not completed, during the contract's term. Yet it could not seriously be contended in either instance that the expiration of the contract would terminate the parties' contractual obligation to resolve such a dispute in an arbitral, rather than a judicial forum.
 
 
 41
 ....
 
 
 42
 The parties agreed to resolve all disputes by resort to the mandatory grievance-arbitration machinery established by their collective-bargaining agreement.... [I]n the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract....
 
 
 43
 By their contract the parties clearly expressed their preference for an arbitral, rather than a judicial, interpretation of their obligations under the collective-bargaining agreement....
 
 
 44
 While the termination of the collective-bargaining agreement works an obvious change in the relationship between employer and union, it would have little impact on many of the considerations behind their decision to resolve their contractual differences through arbitration. The contracting parties' confidence in the arbitration process and an arbitrator's presumed special competence in matters concerning bargaining agreements does not terminate with the contract. Nor would their interest in obtaining a prompt and inexpensive resolution of their disputes by an expert tribunal. Hence, there is little reason to construe this contract to mean that the parties intended their contractual duty to submit grievances and claims arising under the contract to terminate immediately on the termination of the contract; the alternative remedy of a lawsuit is the very remedy the arbitration clause was designed to avoid.
 
 
 45
 ....
 
 
 46
 ... [T]he parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, afford a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship. In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.
 
 
 47
 Id. at 250-55. This holding was reiterated and explicated to a degree in Litton Fin. Printing Div. v. NLRB, 111 S.Ct. 2215, 2224-26 (1991):
 
 
 48
 [In Nolde Bros., w]e acknowledged that "the arbitration duty is a creature of the collective-bargaining agreement" and that the matter of arbitrability must be determined by reference to the agreement, rather than by compulsion of law.... With this understanding, we held that the extensive obligation to arbitrate under the contract in question was not consistent with an interpretation that would eliminate all duty to arbitrate as of the date of expiration.
 
 
 49
 ....
 
 
 50
 ... [I]f a dispute arises under the contract here in question, it is subject to arbitration even in the post-contract period.
 
 
 51
 ....
 
 
 52
 [A]s we found in Nolde Bros., structural provisions relating to remedies and dispute resolution--for example, an arbitration provision--may in some cases survive in order to enforce duties arising under the contract. Nolde Bros.' statement to that effect under Sec. 301 of the [Act] is similar to the rule of contract interpretation which might apply to arbitration provisions of other commercial contracts. We presume as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement.
 
 
 53
 (Footnote omitted.) From these cases, it is clear that unless the grievance and arbitration provisions of the collective bargaining agreement were restricted to pre-expiration filings, Wehr's contractual duty to submit to the grievance and arbitration procedures extends beyond the expiration of the collective bargaining agreement. On remand, the district court should thus first determine whether the sending of the letters constituted an attempt to grieve pursuant to the terms of the Louisville Agreement, and second, whether the agreement, by its terms, restricted grievance and arbitration procedures to encompass pre-expiration filings only. Since these questions remain, we do not today determine whether the Union has or has not failed to exhaust its contractual remedies. We simply find that, insofar as the district court grounded its decision to dismiss on erroneous legal grounds, we must reverse its decision and remand for further proceedings.
 
 C
 
 54
 In a final attempt to avoid the unfavorable disposition (to Wehr) we reach in this case, Wehr suggests that, while arbitration of grievances arising under a Section 9 (of the Act, 29 U.S.C. Sec. 159 (1988)) collective bargaining agreement may survive the expiration of the agreement, this same principle does not hold where, as here, the agreement is between a building and construction union and an employer under Section 8(f) of the Act, 29 U.S.C. Sec. 158(f) (1988). Section 9 provides for the selection of a bargaining representative by employees in an appropriate unit by election. If a union has Section 9 status, the duty of an employer to recognize and bargain with the union generally extends beyond the expiration date of a collective bargaining agreement. See Limbach Co. v. Sheet Metal Workers Int'l Ass'n, 949 F.2d 1241, 1271 (3d Cir.1991) (en banc) (Sloviter, C.J., dissenting) (with respect to "labor agreements entered into pursuant to section 9(a), ... the majority status of the union is irrebuttably presumed to continue for a reasonable period of time ... thereby imposing on the employer a continuing duty to bargain in good faith with the representative chosen or designated by his employees").
 
 
 55
 Under Section 8(f), which governs agreements covering employees in the building and construction industries, the majority status of the union need not be determined prior to establishment of the collective bargaining agreement. Furthermore, "upon the expiration of [Section 8(f) ] agreements, the signatory union will enjoy no presumption of majority status, and either party may repudiate the 8(f) bargaining relationship." Deklewa v. International Assoc. of Bridge, Structural & Ornamental Iron Workers, Local 3, 282 N.L.R.B. 1375, 1377-78 (1987). Wehr reasons that since it has no duty to recognize and continue to bargain with the Union upon expiration of the Section 8(f) agreement, its duty to recognize pre-expiration grievance and arbitration clauses likewise ceases.
 
 
 56
 As pointed out in Sheet Metal Workers' Int'l Ass'n, Local 206 v. R.K. Burner Sheet Metal Inc., 859 F.2d 758, 762 (9th Cir.1988), however, the absence of a statutory duty to bargain does not eliminate an employer's contractual obligations under a collective bargaining agreement. Thus have courts, including this one, concluded that interest arbitration provisions of Section 8(f) collective bargaining agreements survive expiration of the agreements. See, e.g., Sheet Metal Workers Int'l Ass'n Local 110 Pension Trust Fund v. Dane Sheet Metal, Inc., 932 F.2d 578, 581-82 (6th Cir.1991); R.K. Burner, 859 F.2d at 761-62. Nolde Bros. and Litton make it clear that the duty to arbitrate which survives expiration of a collective bargaining agreement is based on a contractual obligation, not the post-expiration status of the bargaining representative. We reiterate the relevant statement of the Supreme Court in Nolde Bros.:
 
 
 57
 While the termination of the collective-bargaining agreement works an obvious change in the relationship between employer and union, it would have little impact on many of the considerations behind their decision to resolve their contractual differences through arbitration. The contracting parties' confidence in the arbitration process and an arbitrator's presumed special competence in matters concerning bargaining agreements does not terminate with the contract. Nor would their interest in obtaining a prompt and inexpensive resolution of their disputes by an expert tribunal. Hence, there is little reason to construe this contract to mean that the parties intended their contractual duty to submit grievances and claims arising under the contract to terminate immediately on the termination of the contract....
 
 
 58
 430 U.S. at 254. Since the Section 8(f) collective bargaining agreement was not repudiated upon expiration or by a vote of the unit employees to reject or change their representative, see Deklewa, 282 N.L.R.B. at 1387, before the alleged violations occurred, the contractual remedies endure post expiration.
 
 
 59
 We note that counsel for Wehr effectively abandoned the contention that "[i]t is inconceivable, in view of the employer's right under Deklewa to repudiate the bargaining agreement at expiration by rejecting all of its terms, and to terminate its bargaining relationship with the union in its entirety, that any contractual duty to arbitrate with the union continues after the expiration of a Section 8(f) agreement," Wehr's Br. at 39 (emphasis in original); see also id. at 41 ("if a union fails to grieve an alleged violation of a Section 8(f) agreement during the term of the bargaining agreement, with the result that its arbitration remedy is lost, the union is not afforded an alternative Section 301 action to enforce the alleged violation"), at oral argument, where the following colloquy took place:
 
 
 60
 [JUDGE BATCHELDER:] If the event which would ... give rise to the grievance were to occur the day before the contract expires in the context of the agreement here, it is not your position, is it, that because the next day the contract expires, there would not still be the right to bring a timely grievance within whatever the collective bargaining provisions are relative to that event which occurred while the contract was still in force?
 
 
 61
 [COUNSEL FOR WEHR:] I would not make that argument. I would not make that argument. In other words, I would say that in that circumstance there has been a timely effort to invoke the grievance and arbitration machinery.
 
 
 62
 [JUDGE BATCHELDER:] So there would be an obligation to proceed through the grievance process on the part of the company even though the collective bargaining agreement was no longer in effect.
 
 
 63
 [COUNSEL FOR WEHR:] I would agree with that.
 
 
 64
 [JUDGE JONES:] And that's even true under [a] Section (f) grievance.
 
 
 65
 [COUNSEL FOR WEHR:] I think that would be true.
 
 
 66
 Tape of Oral Argument (Apr. 29, 1993). Thus, Wehr's argument that the sending of the letters by the Union was fatally untimely does not really turn on the expiration of the collective bargaining agreement, but rather seems to turn on the running of a statute of limitations period not argued on appeal and not addressed at all by the district court in its Order.[6] Assuming Wehr has not waived the affirmative defense of statute of limitations, see Haskell v. Washington Township, 864 F.2d 1266, 1273 (6th Cir.1988) ("Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, a defense based upon a statute of limitations is waived if not raised in the first responsive pleading."), the merits of such a defense would presumably turn on the applicable limitations period, the dates the Union's claims accrued (which, in turn, would presumably depend on an inquiry into when the Union discovered or, in the exercise of reasonable diligence, should have discovered the acts constituting the alleged violations, cf. Adkins v. International Union of Elec., Radio & Machine Workers, 769 F.2d 330, 335 (6th Cir.1985)), and perhaps on whether any fraudulent concealment of facts respecting the accrual or merits of the Union's claims tolled the running of the limitations period, cf. Shapiro v. Cook United, Inc., 762 F.2d 49, 51 (6th Cir.1985) (per curiam); Demars v. General Dynamics Corp., 779 F.2d 95, 97 (1st Cir.1985) ("Under federal law, a defendant's 'fraudulent concealment' may toll the statute of limitations until plaintiff discovers the facts that form the basis of his cause of action, so long as two conditions are met: first, 'defendant raising the limitations defense must have engaged in fraud or deliberate concealment of material facts relating to his wrongdoing,' and second, 'plaintiff must have failed to discover these facts within the normal limitations period despite his exercise of due diligence.' ") (citations omitted). Such inquiries, if they are to be conducted at all, are appropriately conducted by the district court in the first instance.
 
 IV
 
 67
 Insofar as the district court grounded its dismissal of the instant action on the grounds that the sending of the Union's letters could not, as a matter of law, constitute an attempt to grieve because the collective bargaining agreement had expired, we reverse its decision. Since we find that the Union's Complaint referenced letters pertaining to the Louisville Agreement only, we affirm the district court's dismissal of the Union's claims for failure to exhaust contractual remedies with respect to any and all alleged violations of the Lexington Agreement. We remand for a determination of whether the sending of the letters in fact constituted an attempt to grieve under the terms of the Louisville Agreement and whether the agreement, by its terms, restricted use of grievance and arbitration procedures to pre-expiration filings only, and for further proceedings not inconsistent with this opinion.
 
 
 68
 CELEBREZZE, Senior Circuit Judge, dissenting.
 
 
 69
 I respectfully dissent form the majority's opinion in two related respects: 1) the majority improperly limited its de novo review to the allegations in plaintiff's complaint; and 2) though the majority ultimately reverses and remands this cause to redetermine whether plaintiff's letters constituted were sufficient to constitute collective bargaining agreement grievances, it makes the following erroneous factual and legal statements and assumptions in footnote 3 on page 8 of its opinion:
 
 
 70
 Since we have not been provided with a copy of the Louisville Agreement, we cannot determine whether the sending of these letters actually constituted an attempt to grieve pursuant to the grievance provisions of that agreement. In reviewing a dismissal pursuant to Rule 12(b)(6), however, we must view the Union's complaint in a light most favorable to the Union, accepting all of the factual allegations of the complaint as true and resolving arguable conflicts between factual allegations in the Complaint in the Union's favor. With this in mind, we conclude, upon reviewing the Complaint, that we may properly assume, arguendo, that sending the two letters constituted "[a]ttempts to grieve and arbitrate," J.A. at 12 (Complaint at 6, para. 21), under the Louisville Agreement.
 
 
 71
 As the majority property sets forth, to determine whether the plaintiff failed to state a claim upon which relief can be granted, the court must regard all factual allegations in the complaint as true and construe the allegations most strongly in favor of the plaintiff. Meador v. Cabinet for Human Resources, 902 F.2d at 475; Dana Corp. v. Blue Cross & Blue Shield, 900 F.2d at 885. Dismissal is proper where it is evident, beyond a doubt, that the plaintiff could not put forth sufficient facts to entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-56 (1957); Shelton v. March, 902 F.2d 1201, 1204 (6th Cir.1990). In the instant case, however, the parties did not rely solely on the pleadings. Where, as here, parties present materials to the court outside the pleadings, FED.R.CIV.P. 12(b)(6) requires that a motion to dismiss based on a failure to state a claim defense" ... shall be treated as one for summary judgment and disposed of as provided in Rule 56 ..., and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."
 
 
 72
 I believe that had the district court conducted a proper FED.R.CIV.P. 56 evaluation, it would not have been able to conclude plaintiff failed to exhaust his administrative remedies without reference to the collective bargaining agreements' grievance procedures. to determine at what point in the grievance process judicial relief may be sought, a court must examine the collective bargaining agreement. Apponi v. Sunshine Biscuits, Inc., 809 F.2d at 1216. The record discloses the parties presented the district court with documentary evidence of plaintiff's so-called grievance letters and certain substantive contract provisions, but not the entire collective bargaining contract nor the collective bargaining grievance procedures. The parties conceded this omission at oral argument on appeal. Without the details of the grievance procedure before it, it seems to me that the district court could not conclude that no genuine issue of material fact remained. Because the district court nonetheless dismissed the claim, however, I would reverse and remand the cause to the district court for a proper disposition pursuant to FED.R.CIV.P. 56.
 
 
 73
 The majority, however, before reversing the matter for a determination of whether plaintiff had exhausted his administrative remedies, chose to review the case on the merits by "assuming arguendo, in a footnote, that plaintiff had in fact exhausted the grievance procedure because he alleged in its complaint that it had. I do not believe this is true.
 
 
 74
 A reviewing court must review de novo the propriety of a dismissal pursuant to FED.R.CIV.P. 12(b)(6). Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.1990), cert. denied, 111 S.Ct. 182 (1990); Dana Corp. v. Blue Cross & Blue Shield, 900 F.2d 882, 885 (6th Cir.1990). A de novo review of the propriety of the district court's ruling requires this court to consider the merits of the motion anew and in its entirety. Choctaw Nation v. United States, 119 U.S. 1, 30 (1886). To conduct a de novo review of the propriety of the dismissal, this court must determine anew whether the union exhausted, attempted to exhaust or was prevented from exhausting the contractual grievance procedures.
 
 
 75
 My de novo review reveals that plaintiff, in its complaint, does not so clearly allege, as the majority states, that it attempted to exhaust the collective bargaining contract remedies. Rather, in paragraph 18 of the complaint, plaintiff states that it:
 
 
 76
 ... failed to pursue its rightful contractual remedies afforded under the parties' collective bargaining agreements, ...
 
 
 77
 Paragraphs 19, 20 and 21 of the complaint set forth plaintiff alleges that defendants made impossible and frustrated its ability to use or attempt to use the contractual grievance process. thus, I believe the majority erred by "assuming arguendo " that plaintiff attempted to exhaust its administrative remedies.
 
 
 78
 Further, I believe a proper de novo review of the propriety of the district court's dismissal is impossible without reference to the collective bargaining grievance procedures.
 
 The district court's order stated:
 
 79
 ... [T]he collective bargaining agreements afforded the sole mechanism for pursuing, reviewing and resolving plaintiff's complaints. The fraud alleged by plaintiff does not fall within the limited exceptions to the exhaustion requirement. Terwilliger v. Greyhound Lines, Inc., 882 F.2d 1033 (6th Cir.1989), cert. denied, 110 S.Ct. 2204, 495 U.S. 956 (1990).
 
 
 80
 The union argues on appeal that the district court failed to consider that it had attempted to utilize the contractual grievance process, but was prevented from doing so by the contractor's lack of cooperation and fraudulent misrepresentations. I do not believe these issues can be addressed on appeal without an examination of the provisions of the collective bargaining agreement delineating what constitutes the grievance process. The district court refers to the collective bargaining agreements in its order. Without such information in the record, it is impossible for this court to decide anew whether plaintiff's two letters captioned "grievance," which were sent to the defendant after the expiration of the collective bargaining agreements, could constitute the initiation of a grievance in any way sufficient to satisfy or attempt to satisfy the exhaustion of remedies requirement. Without reference to the actual contractual grievance procedures, it is likewise difficult for me to understand how the district court could arrive at its decision.
 
 
 81
 In conclusion, I believe the majority's opinion is based upon an incorrect assumption and that this court's review cannot properly proceed beyond a reversal and remand of the district court's judgment on grounds that it did not make an appropriate determination pursuant to FED.R.CIV.P. 56.
 
 
 
 [1]
 The Union has described the terms "general contractor" and "construction manager" as follows:
 On any construction site there is a general contractor or primary contractor. This general contractor holds the basic contract to complete the construction job with the owner of the particular site....
 A general contractor will usually subcontract various aspects of the construction job to smaller companies in order to promote efficiency. A typical subcontracting agreement may involve an agreement between [a] general contractor and, for example, an electrical company to complete all the wiring on a particular site. This is done because the subcontractor usually has a particular skill at completing the work. Therefore, the subcontractor can complete the work cheaper and quicker than the general contractor. All parties benefit from the agreement since the general contractor receives work done well and quickly, and the subcontractor receives steady work and a steady paycheck....
 ....
 ... A construction manager simply oversees a construction job for the owner of the site. The construction manager has no control or authority over hiring on a particular job site and simply serves as an administrative overseer of the site....
 [Wehr] would not be bound by the subcontracting clauses if it were a mere construction manager on the sites in question. The construction manager has no contractual agreement with the parties that work under him.
 Union's Br. at 29-31.
 
 
 [2]
 The dissent maintains that, since "the parties did not rely solely on the pleadings" but "present[ed] materials to the court outside the pleadings" (viz., "documentary evidence of plaintiff's so-called grievance letters" and "certain substantive contract provisions"), the district court was required to transform the motion to dismiss for failure to state a claim upon which relief can be granted into one for summary judgment. We disagree
 District courts have the discretion to consider materials outside the pleadings when proceeding to dispose of motions to dismiss. Only when such consideration is actually made, however, is an initial motion to dismiss for failure to state a claim upon which relief can be granted to be treated as a motion for summary judgment. Rule 12(b) reads, in pertinent part: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." (Emphasis added.) See, e.g., Fugarino v. Hartford Life & Accident Ins. Co., 969 F.2d 178, 182 (6th Cir.1992) ("When matters outside the pleadings are presented to and considered by the court in a Rule 12(b)(6) motion, the motion is treated as a motion for summary judgment.") (emphasis added), cert. denied, 113 S.Ct. 1401 (1993); Friedman v. United States, 927 F.2d 259, 261 (6th Cir.1991) (where facts beyond the pleadings were used to consider whether plaintiff had a valid claim, Rule 12(b)(6) motion was turned into Rule 56 motion); see also Reid v. Hughes, 578 F.2d 634, 636 n. 2 (5th Cir.1978) ("Nothing in the record before us prompts us to think that the judge took into consideration matters outside of the pleadings when making his decision. The mere fact that the defendants included such matters in their memoranda to the court in support of their motion does not mean that the court in fact considered this material in any way when making its decision."); Riestenberg v. Broadview Fed.Sav. & Loan Co., No. 87-3436 (6th Cir. Apr. 5, 1988).
 As we see it, the question is, then, did the district court consider alleged facts outside of those facts alleged in the pleading? As the dissent suggests, the district court seemed to consider the two "GRIEVANCE" letters attached as exhibits to the Complaint. But these letters were clearly a part of the "pleading" for purposes of Rule 12(b). See Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); see also Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir.1991) ("In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated into the complaint by reference."). Furthermore, though the dissent suggests that "certain substantive contract provisions" outside the pleadings were considered, such provisions were specifically quoted in the Complaint (paragraphs 11-12). If and to the extent that copies of the actual collective bargaining agreement provisions were submitted apart from the pleading, they "added nothing new, but, in effect, reiterated the contents of the complaint itself," Song v. City of Elyria, 985 F.2d 840, 842 (6th Cir.1993), and thus did not transform the motion from a 12(b)(6) motion to a Rule 56 motion, id.
 Based on our review of the record, the district court did not rely on any factual allegations outside the pleading in making its determination that the Union was not excused from attempting to grieve during the pendency of the collective bargaining agreement. Thus, the granting of Wehr's Motion to Dismiss under Rule 12(b)(6) for Failure to State a Claim upon which Relief Can Be Granted should not, in our view, be construed as a grant of summary judgment.
 
 
 [3]
 On the basis of the Union's Complaint (p 21), which references only the April 29, 1991 and May 17, 1991 letters, we find that the Union has not attempted to pursue the contractual remedies of the Lexington Agreement for violations thereof. See, e.g., J.A. at 22 (Exhibit B to the Complaint, viz., the letter of April 29, 1991, only refers to the Louisville Agreement); Union's Br. at 16 ("The union filed a grievance with the company pursuant to 3.1(b) of the parties' Collective Bargaining Agreement (albeit the Louisville Agreement)."). Thus, to the extent that the district court's Order dismisses the Union's Section 301 claims that relate to violations of the Lexington Agreement for failure to exhaust contractual remedies, the district court's decision is hereby affirmed
 The Union has advanced one argument on appeal that would, if meritorious, warrant a different result with respect to violations of the Lexington Agreement. Specifically, the Union contends that Wehr, when it represented to the Union that it was a manager as opposed to a general contractor, essentially repudiated the entire collective bargaining agreement with respect to the particular construction jobs at issue. Put another way, since Wehr, by claiming it was a manager, denied the existence of a contract to do construction work with the owner of the project site, it essentially denied the applicability of the collective bargaining agreements to those projects. The Union suggests that denying the applicability of the collective bargaining agreements on particular sites amounted to "a repudiation of the entire contractual agreement, including the grievance procedure." Union's Br. at 33.
 Wehr characterizes this argument as an "exercise in legal sophistry." Wehr's Br. at 27. We likewise find this argument to be without merit. Stated simply, denying the applicability of collective bargaining agreements to particular construction projects does not suggest a repudiation of the entirety of the collective bargaining agreements between the Union and Wehr. And there is nothing in Wehr's representations that suggests that, if the Union were to have initiated grievance proceedings, Wehr would have denied its obligations under the grievance provisions of the collective bargaining agreements.
 
 
 [4]
 Since we have not been provided with a copy of the Louisville Agreement, we cannot determine whether the sending of these letters actually constituted an attempt to grieve pursuant to the grievance provisions of that agreement. In reviewing a dismissal pursuant to Rule 12(b)(6), however, we must view the Union's complaint in a light most favorable to the Union, accepting all of the factual allegations of the complaint as true and resolving arguable conflicts between factual allegations in the Complaint in the Union's favor. With this in mind, we conclude, upon reviewing the Complaint, that we may properly assume, arguendo, that sending the two letters constituted "[a]ttempts to grieve and arbitrate," J.A. at 12 (Complaint at 6, p 21), under the Louisville Agreement
 
 
 [5]
 At oral argument, for example, counsel for Wehr stated, "In fact, we submit that the law is clear that the Union in this case had an absolute duty, an absolute duty, to investigate and grieve before the contract expired and the arbitration remedy was lost." Tape of Oral Argument on Kentucky State Dist. Council of Carpenters v. Wehr Constructors, Inc., No. 92-5931 (Apr. 29, 1993) (available through the Office of the Clerk, United States Court of Appeals for the Sixth Circuit) [hereinafter Tape of Oral Argument (Apr. 29, 1993) ]. See also Wehr's Br. at 29-30 ("First, the Union disregards the settled principles of labor law reviewed above and makes the bald and unsupported argument that a timely resort to the arbitration remedy--timely in the sense of making an attempt to file a grievance while the contract is in force--is unnecessary. However, the Union's claim that it was under no obligation to make a timely effort to invoke its arbitration remedy by a grievance filed during the term of the agreements allegedly breached plainly is wrong. [p] Where no resort to an arbitration remedy is made before a bargaining agreement either expires without renewal or before the agreement otherwise is terminated, a Section 301 plaintiff must justify its failure to grieve during the term of the agreement.") (emphasis in original); Memorandum in Support of Defendant's Motion to Dismiss under Rule 12(b)(6) [R. 9] at 18-21
 
 
 [6]
 One other possible construction of Wehr's timeliness argument that was similarly neither explicitly raised on appeal nor addressed by the district court stems from footnote eight of the Supreme Court's opinion in Nolde Bros., 430 U.S. at 255 n. 8, which states that "we need not speculate as to the arbitrability of post-termination contractual claims which, unlike the one presently before us, are not asserted within a reasonable time after the contract's expiration." As the Ninth Circuit made clear in Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers Int'l Union, Local 104, 933 F.2d 759, 763 (9th Cir.1991), in this Nolde Bros. footnote:
 the relevant issue of timing concerned whether conduct occurring after the expiration of a collective bargaining agreement could be the subject of arbitration. [Cases cited.] Here, the conduct giving rise to the grievance clearly occurred within the relevant period; only the grievance procedure was initiated after the expiration of the agreement. Under these circumstances, timeliness is governed by the grievance procedures of the [collective bargaining agreement]. To reach any other conclusion would allow parties to breach with impunity collective bargaining agreements during the agreements' terms as long as they successfully covered their tracks so that the discovery of any breach was postponed until after the expiration of the particular agreement.
 (Emphasis added.) (Footnote omitted.) Since the alleged violations of the collective bargaining agreement in the instant case allegedly occurred during the term of the agreement, any "reasonable time" argument based on footnote eight of Nolde Bros. would fail.