**EASY WAY, INC., a Michigan Corporation, Plaintiff–Appellant,**

v.

**TRANSPORT INTERNATIONAL POOL, INC., a Pennsylvania Corporation, Defendant–Appellee.**

No. 01–2411.

United States Court of Appeals, Sixth Circuit.

May 27, 2003.

Before GUY, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

PER CURIAM.

Plaintiff, Easy Way, Inc., appeals from the dismissal of the first amended complaint under Fed.R.Civ.P. 12(b)(6). Plaintiff's claims rest on the allegation that defendant, Transport International Pool, Inc. (TIP), contracted to purchase a number of truck trailers from another party, Rush Trucking Corporation, and that the purchase would include 24 trailers owned by plaintiff and leased to Rush. Plaintiff asserted a claim, as a third-party beneficiary, for breach of an alleged contract between TIP and Rush; a claim for breach of an alleged contract between plaintiff and TIP; and a claim for tortious interference with plaintiff's business relationship with Rush. Plaintiff argues that the district court erred in dismissing the breach of contract claims as barred by the statute of frauds and in finding that the tortious interference claim failed because a business relationship continued between plaintiff and Rush. After review of the record, we affirm the judgment.

## I.

Commenced in state court, this action was removed to federal court on the basis

of diversity jurisdiction. Defendant then filed a motion to dismiss under Rule 12(b)(6), which plaintiff opposed. The motion was granted, but plaintiff was allowed an opportunity to amend the complaint. In amending, plaintiff appended a letter from defendant to Rush concerning the trailers and alleged that this letter satisfied Michigan's statute of frauds. MICH. COMP. LAWS ANN. § 440.2201 (West 1994) (UCC § 2–201). Defendant filed another motion to dismiss, which was granted.

Since we are reviewing the decision on a 12(b)(6) motion, we begin with the allegations made in the first amended complaint. According to plaintiff, TIP contracted in May 1999 to purchase the following truck trailers from Rush: 20–1993 48' trailers; 21–1993 53' trailers; and 25–1994 48' trailers. Plaintiff, defendant, and Rush Trucking all understood that 24 of the 1994 trailers to be purchased were owned by plaintiff and leased to Rush, and that plaintiff would receive a portion of the proceeds from the sale. Plaintiff avers that it took those trailers "out of the marketplace," meaning they were no longer being leased to Rush, so that they would be available for purchase by TIP. TIP did not purchase those trailers and, as a result, plaintiff seeks damages for lost lease payments, lost opportunity to lease additional units it had planned to purchase with the proceeds, and the lesser price it ultimately received for the trailers from another purchaser.

TIP argued that the breach of contract claims were barred by the statute of frauds. In response, plaintiff argued that the May 27, 1999 letter it had appended to the first amended complaint was adequate to satisfy the statute of frauds. The body of the letter from defendant to Rush, stated as follows:

In follow up to our conversation, I have listed purchase pricing for FRP constructed equipment per your request. This purchase price is based on Rush Trucking Corporation upgrading these listed units, with TIP trailers on a five year operating lease.

Specifications and Purchase Price

1. 20–1993 vintage, 48' Overall Length, Spring Ride Suspension-$7000.00 per unit

2. 21–1993 vintage, 53' Overall Length, Spring Ride Suspension-$8000.00 per unit

3. 25–1994 vintage, 48' Overall Length, Air Ride Suspension-$8500.00 per unit.

The listed units must have a minimum of 50% tires and brakes, be identified and have no more than $250.00 in damage per unit.

If you have any questions or need additional information, feel free to call me. Thank you for your much valued business, and I look forward to servicing your future trailer needs.

After hearing oral argument, the district court found this letter was not sufficient to indicate that a contract for sale had been made between TIP and either Rush or the plaintiff. As a result, the breach of contract claims were found to be barred by the statute of frauds. The district court had previously dismissed the tortious interference claim in the original complaint because TIP was not a third party to the alleged contract between TIP and Rush. Plaintiff clarified that this claim was based on TIP's alleged interference with plaintiff's lease arrangement with Rush. Dismissing the claim again, the district court found there could be no tortious interference because a business relationship continued between plaintiff and Rush. Judgment was entered accordingly, and this appeal followed.

## II.

The decision to dismiss an action under Rule 12(b)(6) is a question of law which we

review *de novo*. *Bovee v. Coopers & Lybrand CPA*, 272 F.3d 356, 360–61 (6th Cir. 2001). We must "construe the complaint in the light most favorable to plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Id.* at 360.

## A. Breach of Contract

■ Plaintiff maintains that it pleaded each of the elements of a breach of contract claim with respect to a contract to purchase the trailers either between the defendant and Rush, with plaintiff as an intended beneficiary, or between plaintiff and defendant. On appeal, plaintiff contends that the district court erred by disregarding its allegation that the May 27, 1999 letter satisfied the statute of frauds and by considering matters "outside the pleadings." This argument misses the mark.

First, while dismissal may not be based on the court's disbelief of the factual allegations in the complaint, the standard of review requires " 'more than the bare assertion of legal conclusions.' " *Id.* at 361 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995)). Moreover, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Second, the letter, having been attached to the amended complaint, became part of the pleading such that its consideration did not "convert" the motion to one for summary judgment. *See* FED. R. CIV. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Ky. State Dist. Council of Carpenters, AFL–CIO v. Wehr Construction, Inc.*, No. 92–5931, 1993 WL 288277, *5 n. 2 (6th Cir. July 28, 1993) (citing *Kramer v. Time Warner Inc.*, 937

F.2d 767, 773 (2d Cir.1991)). Thus, we find the district court properly considered the May 27, 1999 letter in deciding the motion to dismiss. *Accord GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir.1997) ("Although a party may allege in its complaint that a writing satisfies the statute [of frauds], the document controls when it is properly before the court.")

Finally, plaintiff argues that even if the letter was properly considered, the court erred in concluding that it failed to satisfy the statute of frauds. Michigan's statute of frauds states in pertinent part:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is *some writing sufficient to indicate that a contract for sale has been made between the parties* and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

MICH. COMP. LAWS ANN. § 440.2201 (emphasis added). The district court found the letter was, at most, a "pricing letter," which did not indicate that defendant had contracted to purchase the trailers.

Without directly challenging this finding, plaintiff argues that the letter satisfied the statute because it specified the quantity of goods to be purchased. Plaintiff relies in particular on the following passage from *Lorenz Supply Company v. American Standard, Inc.*, 419 Mich. 610, 358 N.W.2d 845, 847 (1984):

A writing that satisfies § 2–201 does not prove the terms of a contract; such a writing merely removes the statutory bar to the enforcement of the contract

whether its terms–other than the quantity term which alone must be specified in writing–be written, oral, or partly written and partly oral.

While Michigan law does not require that any term, other than quantity, be specified in the writing, the writing itself must indicate that a contract for sale has been made. This proposition was reiterated by the Court in *Lorenz*, which stated: "The requirements of § 2–201 are satisfied if the writing indicates that 'a contract of sale has been made between the parties' and 'specif[ies] a quantity'. 2 Anderson, Uniform Commercial Code (3d ed), § 2–201:97, p. 61." *Id.* at 847. Examining the letter *de novo*, we agree with the district court that the writing is not sufficient to indicate that a contract was indeed entered into between defendant and either plaintiff or Rush for the purchase of the trailers. Consequently, the breach of contract claims were properly dismissed.[1]

### B. Tortious Interference with Business Relationships

 To prove a claim of tortious interference under Michigan law, the plaintiff must establish: (1) the existence of a valid business relation or expectancy; (2) defendant's knowledge of the business relation or expectancy; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to plaintiff. *Grand Rapids Plastics, Inc. v. Lakian,* 188 F.3d 401, 407 (6th Cir.1999) (citing *Mich. Podiatric Med. Ass'n v. Nat'l Foot Care Program, Inc.,* 175 Mich.App. 723, 438 N.W.2d 349, 354 (1989)). The district court concluded that plaintiff could not state a claim because plaintiff had not alleged a termination of its business relationship with Rush Trucking.

Taking issue with that determination, plaintiff explains that this claim is based on the termination of its *expectancy* in the continued lease of the 24 trailers to Rush and not a complete termination of the business relationship. This also relates to the district court's earlier ruling that found plaintiff could not state a claim because defendant was not a third party to the terminated relationship.

Plaintiff's amended complaint nonetheless fails to allege facts that could support a finding on the third element of the tort, which requires that a plaintiff "must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Feldman v. Green,* 138 Mich.App. 360, 360 N.W.2d 881, 891 (1984); *see also Podiatric Ass'n,* 438 N.W.2d at 355 (quoting *Formall, Inc. v. Cmty. Nat'l Bank of Pontiac,* 166 Mich. App. 772, 421 N.W.2d 289 (1988)). Plaintiff has alleged only that defendant intentionally reneged on the contract with knowledge of the lease arrangement between plaintiff and Rush. Consequently, the claim for tortious interference with business relationship or expectancy was properly dismissed for failure to state a claim.

**AFFIRMED.**

---

1. Plaintiff notes that it made a plea at argument for a chance to conduct discovery to inquire about what TIP meant by closing the letter by thanking Rush for "its much valued business." The point of the statute of frauds is to require a writing that shows a contract was made. While parol evidence may be offered to establish an oral contract, the statute of frauds still requires that such a contract be evidenced by a writing. In *Lorenz*, the writing was a letter from the defendant company that "welcomed" plaintiff as a distributor for the company. This was sufficient to show that a contract had been made.