Jim SHELTON, William Shrewsbury, Michael Borders and George D. Zamias, Plaintiffs–Appellants,

v.

John O. MARSH, Ernest J. Harrell and Robert D. Brown III, Defendants–Appellees.

No. 89–5934.

United States Court of Appeals, Sixth Circuit.

Argued March 12, 1990.

Decided May 4, 1990.

Victor L. Baltzell, Jr., Nold, Miller, Mosley, Clare, Hubbard & Townes, Louisville, Ky., Harvey A. Feintuch (argued), Fink, Weinberger, Fredman, Berman, Lowell & Fensterheim, New York City, for plaintiffs-appellants.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Frederick A. Stine, V, Asst. U.S. Atty., Covington, Ky., David C. Shilton, A. Terry Schley (argued), U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., Sam Mullett, U.S. Army Corps of Engineers, Huntington, W.Va., for defendants-appellees.

Before KENNEDY and NORRIS, Circuit Judges; and GADOLA, District Judge.[*]

* The Honorable Paul V. Gadola, United States District Court for the Eastern District of Michigan, sitting by designation.

KENNEDY, Circuit Judge.

Appellants appeal the District Court's dismissal for failure to state a claim in their action under the Clean Water Act (CWA), 33 U.S.C. § 1251 *et seq.* Appellants [1] sued the Army Corps of Engineers (the Corps) [2] to prevent the construction of a shopping mall which would destroy a wetland area in Ashland, Kentucky. They claimed that the permits allowing development were invalid because they were granted outside the procedures of the CWA. The District Court dismissed the action on the grounds that appellants failed to allege facts which would support a finding that the relevant regulatory provisions of the CWA were violated, and that any procedural errors that may have occurred were harmless. We agree with the District Court and AFFIRM.

Congress vested the Corps with authority to issue development permits to regulate the discharge of dredged and fill material into navigable waterways. 33 U.S.C. § 1344. So-called "section 404 permits" are given on a case-by-case basis and are issued only upon compliance with specific criteria.[3] The Corps can also authorize development of wetlands by issuing what is known as a Nationwide Permit Number 26 (NWP 26) under 33 C.F.R. § 330.5(a)(26). NWP 26 permits are not subject to the same approval criteria as section 404 permits. Congress authorized the Corps to grant such general permits where the area affected is small and the need for full review of the proposed activity is slight.

The Glimcher Company (Glimcher) applied to the Corps for a section 404 permit on October 15, 1987 to build a shopping mall along a 1,500 foot stretch of Long Branch Creek in Ashland, Kentucky. Glimcher proposed to divert the creek through a culvert and to fill the creek bed and some surrounding wetlands with earth and rock fill material. According to Glimcher, this would involve filling a total of 8.5 acres of wetland area. On November 4, 1987, the Corps issued a public notice of Glimcher's permit application to solicit comments. It received various comments, including a November 19, 1987 letter from the Kentucky Department of Fish & Wildlife Resources (KDFWR) which was forwarded to the Corps by the Kentucky Natural Resources and Environmental Protection Cabinet (KNREPC) by letter of January 11, 1988. The January 11, 1988 KNREPC letter recommended that there be a "two for one" mitigation of wetland loss, meaning that two acres of wetland area needed to be recreated for every one lost due to construction.

After receiving comments from various state and private organizations, the Corps granted a section 404 permit on February 2, 1988. The permit incorporated the mitigation efforts outlined by the KDFWR, as well as the conditions and restrictions contained in the KNREPC's January 11, 1988 letter. Following the grant of the general section 404 permit, the Corps reviewed its decision and found that the development would affect only 8.5 acres of wetland area and that the development was above the "headwaters." [4] The development therefore met the requirements of NWP 26. On June 7, 1988, the Corps sent a letter to Glimcher informing it that it could develop the wetlands pursuant to NWP 26, and that issuance of the NWP 26 permit superseded and took precedence over the previously-issued section 404 permit. It is important to note that the NWP 26 permit incorporated the same conditions, restrictions, and mitigation requirements as contained in the original section 404 permit. Thus, the concerns voiced by the KDFWR in the context

1. Appellants in this action are Jim Shelton, William Shrewsbury, and Michael Borders, individuals who live, work, and/or own property in Ashland, Kentucky. George D. Zamias is a partner in a Pennsylvania corporation that is constructing a shopping mall in the Ashland area.

2. Appellees in this case are various officials associated with the Army Corps of Engineers.

3. The criteria are set out at 40 C.F.R. Part 230. They are commonly referred to as "Section 404(b)(1) Guidelines."

4. "The term 'headwaters' means the point on a non-tidal stream above which the average annual flow is less than five cubic feet per second." 33 C.F.R. § 330.2(b).

of the section 404 permit were addressed under the NWP 26 permit.

This action challenges the section 404 permit on the grounds that the Corps failed to consider practicable alternatives to the wetland destruction, that there were methods to mitigate damage that the Corps did not consider, and that the public interest would be adversely affected by the proposed development. When the Corps told appellants that it had issued the permit under NWP 26, rather than section 404, appellants filed an amended complaint on November 3, 1988. That complaint added the allegation that the Corps, in issuing the NWP 26 permit, was attempting to "cover up" its failure to follow regulations in issuing the section 404 permit. It further alleged that the Corps failed to follow regulations to allow modification, revocation, or suspension and notice, and challenged the Corps' authority to issue an NWP 26 permit after first issuing an individual section 404 permit. The Corps filed a motion to dismiss. Appellants filed a response memorandum which argued that the Corps could not use NWP 26 to cure a defectively-issued section 404 permit. The Corps pointed out in a memorandum that the NWP 26 permit superseded, rather than modified, the section 404 permit and that no additional notice was required for such permits. The District Court granted the Corps' motion to dismiss. It held that appellants failed to allege that the requirements of NWP 26 were not met and, alternatively, that its failure to provide notice pursuant to 33 C.F.R. § 330.7 was at worst a harmless error since actual notice was given with respect to the individual section 404 permit.

We review de novo the District Court's order of dismissal for failure to state a claim, since "[w]hether the complaint states a cause of action on which relief could be granted is a question of law." *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Dismissal is warranted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S.

41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).

■ As noted above, the District Court dismissed appellants' claim on the grounds that development of the Ashland wetlands was authorized pursuant to NWP 26. On appeal appellants first argue that the Corps acted arbitrarily and capriciously in "transmogrifying" the section 404 individual permit into a general NWP 26 permit because "neither the CWA nor the regulations promulgated thereunder authorize the Corps' unilateral transmogrification of a 404 Individual Permit into a Nationwide Permit...." Appellants' amended complaint alleges that "[t]o the extent the Corps' reliance upon the Nationwide Permit may constitute a modification, revocation or suspension of the Individual Permit, the Corps failed to effect such modification, revocation or suspension in accordance and compliance with the statutes, regulations and guidelines...." Appellants' complaint, however, mischaracterizes the action taken by the Corps. After granting the section 404 permit, it conducted further investigation and discovered that the proposed development met the requirements of the more general NWP 26 permit because the affected wetlands involved less than 10 acres. Appellants do not contest the facts upon which the Corps made this decision. When the Corps contacted Glimcher, it explicitly stated that the NWP 26 permit superseded and replaced the 404 permit. Thus it neither modified, suspended, nor revoked the originally granted section 404 authorization, but merely provided permission for development on a less stringent basis once the Corps found that the requirements for NWP 26 authorization were met. Indeed, there is no material difference between the terms and conditions of the section 404 permit and the NWP 26 permit, since the NWP 26 permit expressly incorporated "all conditions previously specified in the individual [section 404] permit issued on February 2, 1988."

■ The relationship between section 404 permits and NWP 26 permits was described in *Riverside Irrigation District v. Stipo*, 658 F.2d 762, 764 (10th Cir.1981):

The general rule under Section 404 for anyone planning activity which will result in the discharge of dredged or fill material into waters of the United States is that they must apply for a permit from the Secretary of the Army (who acts through the Corps of Engineers) unless the Secretary has issued a general permit on a state, regional, or nationwide basis covering the planned discharge activity.... A nationwide permit is automatic which means that if one qualifies for such a permit no application is needed nor must notice be given before beginning the discharge activity.

Thus, if a development qualifies for an NWP 26 permit, the Corps is authorized to allow development without the need to secure approval required under section 404. Having determined that Glimcher's project qualified for an NWP 26 permit, the Corps informed it that development of the wetland could proceed under the authority of the general NWP 26 permit, rather than the previously-issued individual section 404 authorization. Because the Corps did not "modify" or "transmogrify" the original permit in the manner asserted by appellants, their contention that the Corps acted arbitrarily and capriciously is without merit.

■ We must next determine whether the NWP 26 permit was itself issued according to the procedures set out in the regulations. 33 C.F.R. § 330.5 provides:

(a) *Authorized activities.* The following activities are hereby permitted provided they meet the conditions listed in paragraph (b) of this section and, where required, comply with the notification procedures, of § 330.7.

. . . . .

(26) Discharges of dredged or fill material into the waters listed in paragraphs (a)(26)(i) and (ii) of this section except those which cause the loss or substantial adverse modification of 10 acres or more of such waters of the United States, including wetlands. For discharges which cause the loss or substantial adverse modification of 1 to 10 acres of such waters, including wetlands, noti-

fication to the district engineer is required in accordance with § 330.7 of this Part.

Because the shopping mall would affect only 8.5 acres of the Ashland wetlands, any notice requirements are governed by 33 C.F.R. § 330.7, which provides that:

(a) The general permittee shall not begin discharges requiring pre-discharge notification pursuant to the nationwide permit at § 330.5(a)(26):

(1) Until notified by the district engineer that the work may proceed under the nationwide permit with any special conditions imposed by the district or division engineer; or

. . . . .

(3) Unless 20 days have passed from receipt of the notification by the district engineer and no notice has been received from the district or division engineer.

After the permittee provides the district engineer with notice of its proposed discharge, the district engineer is required to forward notification of the discharge to the Corps' division engineer. The district engineer must also give notice to the heads of the Environmental Protection Agency (EPA), the United States Fish and Wildlife Service, and any appropriate state natural resource agency if he believes the proposed discharge may be of importance to those agencies. This notification gives the agencies the opportunity to comment on whether an individual section 404 permit should be required instead of an NWP 26 permit. Specifically, 33 C.F.R. § 330.7(c) provides:

(c) *District engineer review of notification.* Upon receipt of notification, the district engineer will promptly review the general permittee's notification to determine which of the following procedures should be followed:

(1) If the nationwide permit at § 330.5(a)(26) is involved and the district engineer determines either, (i) the proposed activity falls within a class of discharge or will occur in a category of waters which has been previously identified by the Regional Administrator, Environmental Protection Agency; the Regional Director, Fish and Wildlife Ser-

vice; the Regional Director, National Marine Fisheries Service; or the heads of the appropriate state natural resource agencies as being of particular interest to those agencies; or

(ii) The particular discharge has not been previously identified but he believes it may be of importance to those agencies, he will promptly forward the notification to the division engineer and the head and appropriate staff officials of those agencies to afford those agencies an adequate opportunity before such discharge occurs to consider such notification and express their views, if any, to the district engineer concerning whether individual permits should be required.

Appellants contend that the NWP 26 permit was invalid because the Corps did not comply with these notice requirements. Upon review of the record, we find that notice was not necessary because all of the interested agencies required to be notified for an NWP 26 permit were notified by the Corps when Glimcher applied for the original section 404 permit. Only the state agency KDFWR objected to the proposal in the context of the section 404 permit. KDFWR's concerns were addressed and resolved by the conditions placed on the section 404 permit and carried over into the NWP 26 permit. There was simply no reason for the district engineer to think that the KDFWR would object to issuance of the NWP 26 permit. Also, in view of the failure of other agencies to object to the section 404 permit, it was reasonable for the district engineer to conclude that they would not object to the issuance of an NWP 26 permit.[5] Therefore, under the

terms of the 33 C.F.R. § 330.7(c), no notice was required.

▌ Similarly, we also agree with the District Court's conclusion that even if notice was required, the failure to provide it was harmless in light of the actual notice the division engineer and agencies received. The District Court noted that the

> Corps notified the appropriate agencies in the more rigorous and extensive individual permit process. The only agency which had any recommendation to make about the proposed permit was the state agency. The state agency issued a water quality certificate which included the conditions it desired to impose on the project. These conditions carry over and must also be met in order to satisfy the requirements of the NWP.

Appellants maintain that the District Court erroneously applied the harmless error doctrine because that doctrine "is to be used only 'when a mistake of [an] administrative body is one that clearly has no bearing on the procedure used or the substance of the decision reached.' " *U.S. Steel Corp. v. United States Environmental Protection Agency,* 595 F.2d 207, 215 (5th Cir.1979) (quoting *Braniff Airways v. CAB,* 379 F.2d 453 (D.C.Cir.1967)). They argue that the Corps' failure to notify violated an integral part of the procedure for issuing NWP 26 permits. However, cases specifically exploring the effect of failure to follow notice procedures have held that the doctrine applies where there is sufficient actual notice. *See, e.g., Sagebrush Rebellion, Inc. v. Hodel,* 790 F.2d 760, 764 (9th Cir.1986) ("We agree that the notices did not comply in every respect with the terms of section

---

**5.** Appellants argue that the district engineer had "more than ample" reason to think Glimcher's plan would be of importance to the EPA, the U.S. Fish and Wildlife Service, the Kentucky Department of Fish & Wildlife Resources, and the Kentucky Natural Resources and Environmental Protection Cabinet. They cite as evidence 40 C.F.R. § 230.10(a)(3), stating that wetlands are "special aquatic sites," and 33 C.F.R. § 320(b)(2) which deems wetlands "important" to the public interest. They also rely on a letter from the U.S. Fish and Wildlife Service that opposes wetlands development in general, and a letter from the Kentucky Natural Resources and Environmental Protection Cabinet opposing the

Ashland development absent efforts to mitigate damage to the wetlands. Although these things do indicate concern for wetlands development on the part of the agencies, they do not compel a finding that the district engineer was required to give notice. The statutorily-expressed concern for the environment in general or wetlands in particular does not mean that those agencies would have an important interest in Glimcher's specific development. It was reasonable for the district engineer to conclude that the notice given relative to the section 404 permit would have satisfied the agencies' interests in the development. Renotification would have thus been duplicative and unwarranted.

204(b). However, we find the error to be harmless since the purposes of [the Federal Land Policy Management Act's] notice requirement were fully satisfied"); [6] *Small Refiner Lead Phase–Down Task Force v. United States Environmental Protection Agency*, 705 F.2d 506, 549 (D.C.Cir.1983) ("even if the agency has not given notice in the statutorily prescribed fashion, actual notice will render the error harmless"). These cases as well as *U.S. Steel* support our conclusion that the failure to follow the notice requirement of 33 C.F.R. § 330.7 does not bear on the "procedures used or the substance of the decision reached." *U.S. Steel*, 595 F.2d at 215. The Corps' failure to renotify interested parties that it was issuing a development permit under NWP 26 was harmless in the face of the actual notice it provided to the parties under the individual section 404 permit.

■ Appellants finally argue that the NWP 26 permit was invalid because the Corps did not consider the practical alternatives available for Glimcher's development project. 33 C.F.R. § 330.5(b) provides:

> *Conditions.* The following special conditions must be followed in order for the nationwide permits identified in paragraph (a) of this section to be valid:

> .    .    .    .    .

> (14) That the management practices listed in § 330.6 of this part shall be followed to the maximum extent practicable.

Section 330.6 in turn provides:

> (a) In addition to the conditions specified in § 330.5 of this Part, the following management practices shall be followed, to the maximum extent practicable, in order to minimize the adverse effects of these discharges on the aquatic environment. Failure to comply with these practices may be cause for the district engi-

neer to recommend, or the division engineer to take, discretionary authority to regulate the activity on an individual or regional basis pursuant to § 330.8 of this Part.

> (1) Discharges of dredged or fill material into waters of the United States shall be avoided or minimized through the use of other practical alternatives.

> .    .    .    .    .

> (5) Discharge[s] in wetlands areas shall be avoided.

Appellants assert that because there were several alternatives available for the development which the Corps did not consider, the Corps issued the NWP 26 permit in violation of this regulation. Appellants maintain that the District Court erred in not considering this violation. We first note that appellants failed to assert this defect in their amended complaint and are not entitled to raise the issue on appeal. However, we reject the appellants' contention on the merits as well. The regulations under section 330.6 apply to actions by the permittee. They are not, as appellants contend, approval criteria for issuing NWP 26 permits.[7] Rather, the regulation merely requires that permittees comply with whatever special management practices are deemed necessary to minimize any damage to wetlands. This is clear from the regulation's language, which gives the district engineer discretion to modify the NWP 26 permits if he finds that the permittee is not following the management practices outlined in section 330.6. *See* 33 C.F.R. § 330.8. Because the regulation authorizes modification of the permit if the permittee is not using best management practices, it logically follows that it operates only *once the permit is issued.* Therefore, section 330.6 regulations cannot serve as criteria for approving and issuing permits.

**6.** The notice requirement at issue in *Sagebrush* was similar to the one involved in this appeal. Notice was necessary in order to inform the public of administrative action and to allow the opportunity for concerned parties to voice their opinions. 790 F.2d at 765.

**7.** Appellants' citation to *Bersani v. United States Environmental Protection Agency*, 674 F.Supp.

405 (N.D.N.Y.1987), *aff'd sub nom. Bersani v. Robichaud*, 850 F.2d 36 (2d Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1556, 103 L.Ed.2d 859 (1989), is misplaced. That case involved the consideration of alternatives in the context of a section 404 permit, rather than an NWP 26 permit.

Accordingly, the judgment of the District Court dismissing appellants' complaint for failure to state a claim is AFFIRMED.