RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0059p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

JOHN F. UTESCH,
　　　　　　　　　　*Defendant-Appellant.*

No. 08-5828

>

———

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 07-00105-001—J. Ronnie Greer, District Judge.

Argued: January 19, 2010

Decided and Filed: March 2, 2010

Before: SILER, MOORE, and CLAY, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Debra A. Breneman, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Nikki C. Pierce, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Greeneville, Tennessee, for Appellant. Helen C.T. Smith, ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

———————————

## OPINION

———————————

KAREN NELSON MOORE, Circuit Judge. John F. Utesch ("Utesch") appeals the district court's denial of his motion to dismiss his indictment for violating the Adam Walsh Sex Offender Registration and Notification Act of 2006 ("SORNA" or "the Act"), Pub. L. 109-248. Utesch pleaded guilty after reserving his right to challenge the Act and its

1

application to him on constitutional and other grounds. The district court sentenced him to three months of incarceration and ten years of supervised release.

On appeal, Utesch argues that (1) SORNA cannot apply to him without violating the Ex Post Facto and Due Process Clauses because the three states among which he moved have not implemented the Act; (2) his conviction violates due process because the government failed to notify him of his obligation to register under the Act; (3) SORNA's grant of authority to the Attorney General to make the Act retroactive violates the nondelegation doctrine; (4) the Attorney General's regulation making SORNA retroactive violated the Administrative Procedure Act ("APA"); (5) SORNA's application under 18 U.S.C. § 2250(a)(2)(A) violates the Commerce Clause; (6) SORNA's application under 18 U.S.C. § 2250(a)(2)(B) violates the Commerce Clause and Ex Post Facto Clause; and (7) SORNA violates the Tenth Amendment by requiring states to implement its provisions. Utesch also challenges the district court's imposition of certain special conditions of supervised release on the grounds that they are not reasonably related to the 18 U.S.C. § 3553(a) sentencing factors, they involve greater deprivation than necessary to achieve the purposes of sentencing, and they are inconsistent with policy statements of the U.S. Sentencing Commission. As explained below, we **REVERSE** the district court's order based on the failure of the Attorney General's retroactivity regulation to conform to the requirements of the APA. Accordingly, we do not reach Utesch's constitutional challenges, and we need not address his conditions of release.

## I.  BACKGROUND

### A.  Factual Background

In 1997, Utesch pleaded guilty to assault with intent to commit sexual abuse of a fourteen-year-old girl, an aggravated misdemeanor, under Iowa Code Ann. §§ 708.1 and 709.11. He was sentenced to 365 days in prison, which was reduced to 30 days, and one year of supervised release. Iowa law classified him as a sex offender and required registration for ten years after his release. Specifically, state law required him to verify his address and phone number annually, to provide notice of any change of address within five days of moving, and to provide notice of compliance with the registration laws of any other state to which he moved within five days of moving.

Utesch registered in Iowa in September 1997, November 1998, April 1999, April 2000, and November 2001. In October 2002, he moved to Virginia and registered as a sex offender there. *United States v. Utesch*, No. 2:07-CR-105, 2008 WL 656066, at *2 (E.D. Tenn. Mar. 6, 2008). On December 31, 2002, he moved to Tennessee, where he has resided ever since. Though he was required to do so within forty-eight hours of establishing residence, Tenn. Code Ann. § 40-39-203, Utesch did not register in Tennessee until his arrest in connection with this case. *Utesch*, 2008 WL 656066, at *2. In September of 2003, 2004, 2005, and 2006, the Iowa Department of Public Safety sent address-verification forms to his last-known address in Iowa. All forms were returned as undeliverable.

From October 2002 to July 2004, Utesch worked at a business located in Tennessee, commuting from Virginia from the period of October to December 2002, when he moved to Tennessee. From July 2004 to August 2005, he was self-employed as a carpenter. From September 20, 2005 to at least November 28, 2007 (the date of his arrest), he worked at K-VA-T Food Stores in Bristol, Virginia, just across the Tennessee border. Utesch therefore "traveled in interstate commerce from his residence in Tennessee to his workplace in Virginia on a regular basis, at least weekly." Supp. Stip. of Facts at 2 (Document 22).

## B. Procedural Background

On November 13, 2007, Utesch was named in a one-count indictment charging him with failure to register or update his registration under Iowa law from September 1, 2006 to November 12, 2007, as required by SORNA, in violation of 18 U.S.C. § 2250(a) and 42 U.S.C. §§ 16911, 16913. He was arrested on November 28, 2007, after which he registered in Tennessee for the first time and in Iowa for the first time since 2001. Utesch filed a motion to dismiss the indictment, and the government responded in opposition. While the motion was pending, the parties entered into a plea agreement under which Utesch reserved the right to appeal the district court's ruling on his motion to dismiss.

The district judge referred the motion to dismiss to a magistrate judge for a report and recommendation, and the magistrate judge held a hearing on February 7, 2008. Following the hearing, the parties submitted a supplemental stipulation of facts detailing Utesch's residency and employment history and the dates of his interstate travel. On February 14, 2008, the magistrate judge issued a report recommending denial of Utesch's

motion. After receiving an objection from Utesch and a response from the government, the district judge adopted the report and recommendation in full on March 6, 2008. *See Utesch*, 2008 WL 656066.

At a hearing on March 17, 2008, the district court accepted Utesch's guilty plea. Following the filing of a presentence report, the submission of memoranda from both parties, and a hearing on June 16, 2008, the district court varied downward from the Guidelines range of 10 to 16 months and sentenced Utesch to three months in prison and ten years of supervised release.

The district court imposed ten special conditions of supervision, including the following five that Utesch challenges on appeal: (1) sex offender mental health treatment as directed by the probation officer; (2) no contact with the victim of his underlying 1997 sex offense without the prior written consent of the probation officer; (3) no possession of photographs or recorded material for the purpose of sexual arousal; (4) submission of his person, vehicle, residence, and other areas over which he exercises control to search for such material; and (5) no access to computers with an internet connection without the probation officer's prior written consent. Utesch objected to the special conditions. He timely filed a notice of appeal on June 27, 2008.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss an indictment, we review the district court's legal conclusions de novo and its findings of fact for clear error or abuse of discretion. *United States v. Grenier*, 513 F.3d 632, 635-36 (6th Cir. 2008). In this case, the operative facts are not in dispute. Utesch challenges the applicability and constitutionality of SORNA, so our review is de novo.

### B. Overview of SORNA

Congress enacted SORNA to create a national system for the registration of sex offenders. 42 U.S.C. § 16901. Section 16913 provides in relevant part that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." § 16913(a).

As part of keeping the registration current, an offender "shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a)" and report the relevant changes. § 16913(c). Section 16913 also explains the requirements for sex offenders registering for the first time. §16913(b). It further provides that

> [t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

§ 16913(d).[1]

SORNA makes it a crime to violate its registration requirements. The Act provides that a person who is (1) "required to register under" SORNA,[2] (2) "travels in interstate or foreign commerce" or is a sex offender under federal, tribal, D.C., or U.S. territorial law, and (3) "knowingly fails to register or update registration as required by [SORNA] shall be fined" and/or imprisoned for up to ten years. 18 U.S.C. § 2250(a).

SORNA became effective on July 27, 2006. On February 28, 2007, U.S. Attorney General Alberto Gonzales issued an immediately effective interim rule applying SORNA "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [the] Act." 28 C.F.R. § 72.3. The Attorney General promulgated this regulation without notice and comment and without a thirty-day advance publication of its final form, disposing of these requirements based on the "good cause" provisions of the APA, 5 U.S.C. § 553(b)(B), (d)(3). *See* 72 Fed. Reg. 8894, 8896. At the same time, the Attorney General stated that comments would be accepted until April 30, 2007. *Id.* at 8895.

---

[1]Section 16913 also provides that states shall create state penalties with a maximum imprisonment term of more than one year for failure to register under SORNA. § 16913(e). This provision is not relevant to the case at bar.

[2]SORNA requires sex offenders to register, 42 U.S.C. § 16913, and defines "sex offender" as "an individual who was convicted of a sex offense," § 16911(1).

On May 30, 2007, the Attorney General published proposed comprehensive guidelines for SORNA, referred to as the "SMART" guidelines after the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking. 72 Fed. Reg. 30,210. The preliminary guidelines reiterated that "SORNA's requirements apply to all sex offenders, including those whose convictions predate the enactment of the Act." *Id.* at 30,212. Comments were to be accepted through August 1, 2007. *Id.* at 30,210.

On July 2, 2008, the Attorney General issued the final SMART guidelines. 73 Fed. Reg. 38,030. Therein, he responded to objections to SORNA retroactivity, *id.* at 38,031, 38,036, and included the retroactivity provision in the final regulations, *id.* at 38,046-47. The regulations stated their effective date as July 2, 2008. *Id.* at 38,030. For the reasons explained below, *infra* note 8, we understand the regulations to have become effective thirty days after their publication, on August 1, 2008. *See* 5 U.S.C. § 553(d).

## C. Retroactive Application of SORNA to Utesch

The federal courts of appeal are divided over whether SORNA by its own terms applies to sex offenders who were convicted prior to SORNA's enactment. The Eighth and Tenth Circuits have held that it does, reading § 16913(d) as conferring on the Attorney General only the limited power of providing a method for previously convicted offenders to comply with SORNA's registration requirements despite the fact that their states may not have required them to register at all or as promptly as SORNA requires. *See United States v. May*, 535 F.3d 912, 916-19 (8th Cir. 2008); *United States v. Hinckley*, 550 F.3d 926, 932-35 (10th Cir. 2008); *United States v. Lawrance*, 548 F.3d 1329, 1336 (10th Cir. 2008). The Fourth, Fifth, Seventh, Ninth, and Eleventh Circuits have held that § 16913(d) gives the Attorney General the additional, broader authority to make SORNA retroactive in the first place, meaning that the Act itself only applies going forward until the Attorney General prescribes otherwise. *See United States v. Hatcher*, 560 F.3d 222, 228-29 (4th Cir. 2009); *United States v. Young*, 585 F.3d 199, 201 (5th Cir. 2009); *United States v. Dixon*, 551 F.3d 578, 581-82 (7th Cir. 2008), *cert.*

*granted sub nom. Carr v. United States*, No. 08-1301, 130 S. Ct. 47, 48 (mem.)[3]; *United States v. Juvenile Male*, 590 F.3d 924, 929 (9th Cir. 2010); *United States v. Madera*, 528 F.3d 852, 858 (11th Cir. 2008).[4] The government urges us to adopt the former view, under which Utesch would lack standing to challenge the validity of any retroactivity regulation issued by the Attorney General, as such a regulation would not be the basis of the application of SORNA's requirements to him. *See, e.g.*, *United States v. Hacker*, 565 F.3d 522, 528 (8th Cir. 2009).

Following the completion of briefing in this case, however, another panel of this court rejected the position advocated by the government. In *United States v. Cain*, 583 F.3d 408 (6th Cir. 2009), the panel held that SORNA was not retroactive as of the date of its enactment and that § 16913(d) vested the retroactivity decision with the Attorney General. *Id.* at 419. It explained that

> Congress required immediate registration of all sex offenders convicted after SORNA, required the Attorney General to make rules for any offenders somehow not able to register with their jurisdiction despite SORNA's implementation, and allowed the Attorney General to determine to what degree SORNA's requirements should apply to offenders convicted before SORNA as well as what registration rules should apply to them.

*Id.* at 416. The issue, then, is whether there exists any valid regulation promulgated by the Attorney General pursuant to § 16913(d) that subjected Utesch to SORNA during the period covered by his indictment. There are three candidates: (1) the February 28, 2007 interim regulation, (2) the preliminary SMART guidelines issued on May 30, 2007, and (3) the final SMART guidelines issued on July 2, 2008.

The parties focus on the February 28, 2007 interim regulation. While that regulation stated that comments would be accepted until April 30, 2007, it became effective upon issuance. 72 Fed. Reg. at 8895. Utesch argues that the interim regulation

---

[3]At oral argument, the government stated that it believed that the issues currently pending before the Supreme Court in *Carr* would not affect Utesch's case.

[4]In the context of a nondelegation challenge, the Second Circuit found it unnecessary to settle on one side of the debate. *United States v. Guzman*, 591 F.3d 83, 91-93 (2d Cir. 2010).

cannot support his conviction because it was not promulgated pursuant to the APA's notice-and-comment and thirty-day waiting-period requirements. With certain exceptions not relevant here,[5] the notice-and-comment procedure requires the following:

>   (b)     General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include
>       (1)     a statement of the time, place, and nature of public rule making proceedings;
>       (2)     reference to the legal authority under which the rule is proposed; and
>       (3)     either the terms or substance of the proposed rule or a description of the subjects and issues involved.
>       . . .
>   (c)     After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. . . .

5 U.S.C. § 553. The purpose of this procedure is "to get public input so as to get the wisest rules," to "ensure fair treatment for persons to be affected by regulations," and "to ensure that affected parties have an opportunity to participate in and influence agency decision making at an early stage." *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 678, 680 (6th Cir. 2005) (internal quotation marks omitted). It may be forgone "when the agency for good cause finds . . . that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." § 553(b)(B). The publication requirement provides that an agency must publish the final version of a regulation for at least thirty days before the regulation becomes effective. § 553(d). The purpose is to "give[] persons affected by the change in the law time to prepare to comply

---

[5]The notice-and-comment procedure is not required for (1) rules involving military or foreign affairs, (2) rules "relating to agency management or personnel or to public property, loans, grants, benefits, or contracts"; or (3) interpretative rules, policy statements, or agency procedural rules. 5 U.S.C. § 553.

with the new rule." *Cain*, 583 F.3d at 423. This provision likewise may be bypassed "for good cause found and published with the rule." § 553(d)(3).

In issuing the interim regulation, the Attorney General certified that immediate effectiveness was necessary to eliminate uncertainty about the Act's coverage and to ensure protection of the public without delay. 72 Fed. Reg. at 8896-97. In *Cain*, the panel held that the Attorney General's reasons did not amount to the "good cause" required to bypass the APA's procedural requirements under 5 U.S.C. § 553(b)(B), (d)(3). 583 F.3d at 420-24.[6] The panel explained that "a desire to provide guidance to regulated parties is not sufficient to show good cause to bypass the notice and comment provisions," and noted that some period of uncertainty was unavoidable given Congress's decision to delegate the retroactivity decision and "to decline to bypass the APA's requirements." *Id.* at 421. In this way, the panel reasoned further, "Congress had thus already balanced the costs and benefits of an immediately effective rule compared to the delayed implementation of a reasoned regulation." *Id.* The *Cain* panel found the Attorney General's certification inadequate to dispose of the "thirty-day advance publication" requirement for the same reasons and added that the Attorney General's statement of reasons "is particularly inadequate for a regulation that increases criminal penalties." *Id.* at 423. On those grounds, the panel held that SORNA did not apply to the defendant in that case, who had originally been convicted of a sex offense in 1998 and whose indictment charged him with failure to update his registration from October 16, 2006 through March 28, 2007. *Id.* at 424; *see also United States v. Doshak*, No. 08-3141, 2009 WL 5125516, at *1-2 (6th Cir. Dec. 29, 2009) (unpublished opinion) (applying *Cain* to vacate the conviction of a defendant indicted for violation of

---

[6]Prior to the *Cain* decision, the Sixth Circuit in an unpublished decision treated February 28, 2007 as the appropriate retroactivity date, made statements suggesting that SORNA might be retroactive on its own terms, and stated that § 16913(d) applies only to initial registration. *United States v. Samuels*, 319 F. App'x 389, 393-95 (6th Cir. 2009). Shortly thereafter, a district court in the circuit held that "the Attorney General's explicit rationale demonstrates good cause." *United States v. Hernandez*, 615 F. Supp. 2d 601, 613 (E.D. Mich. 2009). *Cain* has overruled both *Samuels* and *Hernandez* on these points.

SORNA's registration requirements "on or about October 26, 2006, through on or about March 20, 2007").**[7]**

On the basis of *Cain*, it appears that the interim regulation cannot support retroactivity in the instant case. We consider the possibility, however, that while the interim rule did not apply SORNA to the defendant in *Cain*, it may have applied the Act to Utesch. In *Cain*, the defendant was indicted on March 28, 2007, prior to the comments deadline of April 30, 2007 and less than thirty days after publication. The *Cain* court specifically took no position on the validity of an indictment charging a defendant after the close of the comment period and more than thirty days after publication of the rule—that is, a defendant in Utesch's position. 583 F.3d at 423 n.6, 424 n.7.

We now hold that a defendant in Utesch's position is not bound by the interim rule. While the thirty-day advance publication requirement is met here, such that Utesch had time to comply with the rule, *see Rowell v. Andrus*, 631 F.2d 699, 704 (10th Cir. 1980) (holding that a regulation made effective less than thirty days after publication, in violation of 5 U.S.C. § 553(d), may be held valid after the passage of thirty days), we have no indication that the notice-and-comment process was actually carried out. Under standard APA procedure, an agency issues a proposed rule, requests comments, reviews those comments, and then publishes a final rule. As the D.C. Circuit has explained, "notice and an opportunity for comment are to precede rule-making"; the APA requires that "affected parties have an opportunity to participate in and influence agency decision making at an early stage, when the agency is more likely to give real consideration to alternative ideas." *N.J. Dep't of Envtl. Prot. v. EPA*, 626 F.2d 1038, 1049-50 (D.C. Cir. 1980) (internal quotation marks omitted). In this case, the Attorney General—the agency—solicited comments, but the interim rule became effective immediately, before

---

**[7]**The two other circuit courts to have ruled on the validity of the interim regulation under the APA have upheld it. In *United States v. Gould*, 568 F.3d 459 (4th Cir. 2009), the Fourth Circuit held over Judge Michael's vigorous dissent that the reasons preferred by the Attorney General amounted to good cause. *Id.* at 470. The *Cain* panel directly engaged and rejected the Fourth Circuit's reasoning. *Cain*, 583 F.3d at 422 (stating that the *Gould* "court's brief analysis offered only three weak reasons for its holding"). In *Dixon*, the Seventh Circuit dismissed the argument as "frivolous" in a parenthetical with no analysis at all. 551 F.3d at 583.

receipt and review of any public feedback.  There was never any follow-up publication corresponding to the interim regulation that evidenced actual consideration of public commentary.  Therefore, we conclude that the interim rule did not make SORNA effective against Utesch or any other defendants convicted before SORNA's enactment.

We turn next to the comprehensive SMART guidelines, which were promulgated according to notice and comment procedures.  The preliminary guidelines, which included a provision making SORNA retroactive, *see* 72 Fed. Reg. at 30,212, were published on May 30, 2007 and stated that comments would be accepted until August 1, 2007.  *Id.* at 30,210.  The Attorney General then issued the final SMART guidelines on July 2, 2008, responding to the comments received and maintaining that SORNA would be applied retroactively.  73 Fed. Reg. 38,030; 38,031; 38,035-36; 38,046-47.  While this process is precisely what the APA requires, it was not complete by the time of Utesch's indictment on November 13, 2007.  The comments period had closed, but the Attorney General had not yet issued the final rule in response to the commentary.  *See* 5 U.S.C. § 553(c) (providing that the agency shall incorporate a statement of purpose into the rules "[a]fter consideration of the relevant matter presented"); *PPG Indus., Inc. v. Costle*, 630 F.2d 462, 466 (6th Cir. 1980) (reading the APA as requiring agencies "to give reasoned responses to all significant comments in a rulemaking proceeding").  The preliminary guidelines were published before Utesch's indictment, but these were only "[p]roposed guidelines," 72 Fed. Reg. at 30,210, and did not carry the force of law.  *See United States v. Springer*, 354 F.3d 772, 776 (8th Cir. 2004) ("[I]t is well settled that proposed regulations . . . have no legal effect.") (internal quotation marks omitted); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 710 F.2d 842, 846 (D.C. Cir. 1983) (noting that "the issuance of a notice of proposed rulemaking . . . often will not be ripe for review because the rule may or may not be adopted or enforced"); *cf. Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845 (1986) ("It goes without saying that a proposed regulation does not represent an agency's considered interpretation of its statute and that an agency is entitled to consider alternative interpretations before settling on the view it considers most sound.").  To hold otherwise would be contrary to the APA's thirty-day advance publication requirement.  *See Rowell*,

631 F.2d at 702-03 & n.2 (holding that the thirty-day period relates to the final rule, not the proposed rule, because "until publication is made of the rule actually adopted, the public of course does not know which course the agency will take or how to prepare for the regulation").

At the time of Utesch's indictment, then, there was no properly promulgated regulation in place applying SORNA to him retroactively. SORNA became effective against offenders convicted before its enactment thirty days after the final SMART guidelines were published: that is, on August 1, 2008.[8] Utesch's failure to register and his interstate travel in this case took place well before that date.[9] Accordingly, the indictment should have been dismissed. *See* 5 U.S.C. § 706(2)(D) ("The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be without observance of procedure required by law.").

At oral argument, the government raised one final argument that might salvage Utesch's conviction. Citing *Player v. Federal Aviation Administration*, No. 90-3420, 1991 WL 80311 (6th Cir. May 16, 1991) (unpublished opinion), government counsel suggested that the conviction could be upheld on the ground that the APA violations were harmless in light of the proper promulgation of the SMART guidelines, which reaffirmed the interim regulation's retroactivity provision. *Player* concerned a pilot's challenge to the FAA's assessment of a civil penalty against him for flying too low in violation of aviation regulations. *Id.* at *1. In March 1990, the Administrator of the FAA denied relief on the basis of the pilot's failure timely to file an answer to the civil penalty order, as required by the applicable agency regulations. *Id.* at *2. Less than one month after the Administrator's decision, the D.C. Circuit invalidated the FAA

---

[8]Though the guidelines themselves provide an immediate effective date of July 2, 2008, the Attorney General provided no statement of reasons to establish "good cause" for disposing of the thirty-day publication requirement. *See* 5 U.S.C. § 553(d). Had the Attorney General provided a rationale similar to that accompanying its interim regulation, we likely would find it inadequate under the reasoning of *Cain*. 583 F.3d at 421-24. Bound to enforce the procedural requirements of the APA, we therefore hold that the final regulations became effective thirty days after publication. *See Rowell*, 631 F.2d at 704.

[9]For an example of a case in which SORNA's retroactive application was upheld because the relevant conduct happened after the final SMART guidelines became effective, see *United States v. Coleman*, No. 9-30-ART, 2009 WL 4255545, at *1-2 (E.D. Ky. Nov. 24, 2009) (government alleged that defendant failed to register and traveled across state lines through April 2009).

regulations at issue in *Playter* because they had not been promulgated according to the APA's notice-and-comment procedure. *Air Transp. Ass'n v. Dep't of Transp.*, 900 F.2d 369, 380 (D.C. Cir. 1990). In July 1990, the FAA repromulgated the rules in compliance with the APA. The *Playter* court held that any request that the rules be held invalid would be moot in light of the repromulgation. 1991 WL 80311, at *5.

The APA requires us to take "due account . . . of the rule of prejudicial error" before holding any agency action unlawful and issuing relief. 5 U.S.C. § 706. For three reasons, however, *Playter* does not require that we uphold Utesch's conviction based on harmless error. First, *Playter* is an unpublished, per-curiam opinion that is not binding precedent. *See Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002). Second, the *Playter* court based its decision in part on its uncertainty that the original rulemaking violated the APA. The Supreme Court vacated *Air Transport Association*, which dealt with a *pre-enforcement* challenge to immediately effective regulations, and remanded for consideration of mootness after the FAA promulgated new rules and after the parties agreed that the petitioner no longer had an interest in challenging the regulations. *Dep't of Transp. v. Air Transp. Ass'n*, 498 U.S. 1077, 1077 (1991); *Air Transp. Ass'n v. Dep't of Transp.*, 933 F.2d 1043, 1043 (D.C. Cir. 1991) (Silberman, J., concurring) (on remand, explaining how the case had become moot). In *Playter*, then, the court noted that "there is now an absence of authority for petitioner's contention that the Penalty Rules applied in his case were invalid." 1991 WL 80311, at *5. The court also emphasized that the "procedural rules . . . *may* not have been promulgated in accordance with appropriate APA procedures." *Id.*

Finally, the rule of harmless error cannot justifiably be applied on the facts of the instant case. As the Ninth Circuit has pointed out, a reviewing court must focus not merely on the ultimate rule but on the process of an administrative rulemaking; otherwise, an agency could always violate the APA's procedural requirements based on the representation that it would have adopted the same rule had the proper process been followed. *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1487 (9th Cir. 1992). Courts have generally applied the harmless-error rule in the agency context when the

procedural deficiencies did not defeat the purpose of the bypassed requirements.  *See, e.g.*, *Shelton v. Marsh*, 902 F.2d 1201, 1206-07 (6th Cir. 1990) (holding that failure to provide notice was harmless when interested parties had actual notice); *Riverbend Farms*, 958 F.2d at 1487-88 (holding that "all parties before us knew the ground rules" for public comment); *Conservation Law Found. v. Evans*, 360 F.3d 21, 29-30 (1st Cir. 2004) (holding the failure to provide a fifteen-day comment period harmless when the rulemaking process included several opportunities for public participation).  Here, the process was fatally flawed; the Attorney General provided affected parties no opportunity to participate in the crafting of the interim rule *before* it purported to take effect against them.

The publication of the final SMART guidelines does not alter the analysis.  The fact that the Attorney General eventually made SORNA retroactive through legitimate means cannot sustain prosecution of an individual based on conduct committed long before the final guidelines' enactment, and to the extent that *Player* suggests otherwise, we disavow it.[10]  Indeed, it is the very essence of the constitutional protection against ex-post-facto laws that a defendant like Utesch, who was charged with a criminal violation, cannot be punished for conduct occurring before the criminal regulation of that conduct.  *See* U.S. Const. art. I, § 9, cl. 3; *Weaver v. Graham*, 450 U.S. 24, 31 (1981) ("The critical question is whether the law changes the legal consequences of acts completed before its effective date."); *Kellogg v. Shoemaker*, 46 F.3d 503, 509-10 (6th Cir. 1995) (holding that parole-revocation regulations violated the Ex Post Facto Clause for prisoners who committed their offenses before the date of enactment).[11]  For these reasons, the interim regulation's procedural deficiencies were not harmless.  As the final

---

[10]It is worth noting that if the government's argument carried any water, it would have required a finding of harmless error—at least with respect to the failure to follow the notice-and-comment procedure—in *Cain* itself, which was heard on April 28, 2009, after the final SMART regulations had gone into effect.  583 F.3d at 408.

[11]Even before SORNA, Congress had criminalized the failure of sex offenders to register in accordance with state law in the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act.  42 U.S.C. § 14071.  Under that statute, a violation was punishable by up to one year in prison. § 14072(i).  The retroactive application of SORNA, which makes failure to register punishable by up to ten years of incarceration, would violate the Ex Post Facto Clause because SORNA increases the punishment for a criminal act.  *See Collins v. Youngblood*, 497 U.S. 37, 43 (1990).

SMART guidelines had not become effective by the time of Utesch's indictment, the district court's order must be reversed.

## III.  CONCLUSION

Because the first properly promulgated regulation making SORNA retroactive became effective eight-and-a-half months *after* the final date covered by Utesch's indictment, the district court should have dismissed the indictment.  Accordingly, we **REVERSE** the district court's denial of Utesch's motion to dismiss the indictment, and we **VACATE** his conviction and sentence.  We therefore do not reach Utesch's constitutional challenges to SORNA or his objections to the special conditions of release imposed by the district court.